IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BRUCE E. KATZ, M.D., P.C.**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**DALE PHARMACY & SURGICAL, INC.**,<br><br>*Defendant*. | Case No. 1:20-cv-01876-WFK-SJB |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**I.    INTRODUCTION**

Despite its clear violation of the Telephone Consumer Protection Act (the "Act" or the "TCPA"), Defendant Dale Pharmacy & Surgical, Inc. ("Defendant" or "Dale") moves to dismiss the Complaint, arguing that: (1) it complied with the TCPA's opt-out language provisions, (2) it supposedly offered complete relief and the Court therefore lacks subject matter jurisdiction, and (3) Plaintiff's class claims should be dismissed at this early stage of the litigation.

Fortunately for Plaintiff and the members of the alleged Class, Dale demonstrates a serious misunderstanding of the law and its Motion should be denied. First, per the Act, the opt-out notice on the fax must state "that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines <u>and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful</u>." 47 U.S.C. § 227(b)(2)(D)(ii) (Emphasis added). Dale's opt-out

1

language plainly does not contain the latter requirement and its opt-out language is therefore non-compliant. And in any case, the opt-out language analysis only comes into play if Dale asserts an established business relationship defense, which it does not do.

Second, despite Dale's argument to the contrary, in 2016 the Supreme Court expressly ruled that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case". *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016). Finally, in order for Dale to prevail on its motion to "dismiss" the class allegations it would need to demonstrate that certification would be *impossible*, a burden it clearly cannot meet in this case.

Thus, as explained below, this Court should deny Dale's Motion.

## II.   STATEMENT OF FACTS

Plaintiff Katz received four (4) unsolicited facsimile advertisements from Defendant. (Compl. ¶ 12.) The faxes were transmitted to Plaintiff on May 30, 2019, August 21, 2019, September 18, 2019, and October 3, 2019. (*Id*. ¶ 13.) Three of the four faxes contain the statement "IF YOU WOULD LIKE TO BE REMOVED FROM OUR FAX LIST CALL 800-892-0175," and one fax contains no such statement. (*See* Dkt. 1, Ex. A.) Defendant admits that it has no relationship with Plaintiff. (*See* "Responses to Interrogatories," attached hereto as Exhibit A, Interrogatory No. 1). Rather, Defendant states that it obtained Plaintiff's fax number by purchasing a list of leads from a company called "Info USA" in 2010 and again in 2014. (*Id.*, Interrogatory No. 2.) It appears that Defendant contracted with an entity known as "Wes Fax" to send the faxes at issue on its behalf. (*Id.*, Interrogatory No. 6.)

**III.     ARGUMENT**

In reviewing a motion to dismiss, all well pleaded facts and reasonable inferences must be accepted as true and viewed in the light most favorable to the plaintiff. *Robins v. Oklahoma*, 519 F.3d. 1242, 1247 (10th Cir. 2008). A complaint survives where the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)).

**A.     Plaintiff's Claim Is Not Mooted By Defendant's Offer of Judgment**

Dale's first argument is that its individual offer of judgment to Plaintiff somehow moots Plaintiff's case. This argument is meritless and frankly sanctionable.

Dale states that "a proper offer [of judgment] made before a (class certification) motion is filed moots a named plaintiff's case". citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895-895 (7th Cir. 2011). (Mem. In Supp. MTD at 4.) However, this is no longer the law and reliance on *Damasco* is flatly improper. The case was overruled by the Seventh Circuit in 2015. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015) ("We overrule *Damasco, Thorogood, Rand*, and similar decisions to the extent they hold that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy.").

Similarly, and contrary to Dale's reliance on *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 2013 (2013), the Supreme Court—in a TCPA case no less—expressly ruled in 2016 that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016). Indeed, the *Campbell-Ewald Co*. Court expressly held that "We now adopt Justice Kagan's [dissenting] analysis [in *Genesis Healthcare*], as has every Court of Appeals ruling on the issue post *Genesis Healthcare*. Accordingly, we hold that Gomez's complaint was not effaced by

3

Campbell's unaccepted offer to satisfy his individual claim." *Id.* at 670. This is perhaps even more egregious than Dale's failure to cite *Chapman* as having overruled *Damasco*. It relied on *Genesis* to argue that Plaintiff's claim is moot, but failed to cite to the later *Campbell-Ewald Co.* decision overruling *Genesis*, or indeed to any post-*Campbell-Ewald* authority.

In short, the "pick off" strategy Dale asserts hasn't been legal for over 4 years now, and Dale's reliance on cases that are no longer good law and its failure to notify the Court that its authority has been overruled is troubling and inappropriate. The Motion should be denied and, as explained in Plaintiff's contemporaneously filed Rule 11 Motion, Dale should be sanctioned.

**B.     Dale Misunderstands the Law on Opt-Out Notices**

As explained above, Dale's pick off strategy to moot Plaintiff's claim has not been permissible for years. But putting that aside, Dale hasn't offered complete relief in any case. Plaintiff received 4 unlawful faxes, not 1. Thus, even if the pick-off strategy was legally sufficient, Dale's $1,500 offer (which has expressly been rejected) would still fail to moot the claim. The reason why begins with another unfortunate lack of candor with the Court by Dale.

Dale states that "the aforementioned act plainly exempts such alleged offending communications where, as in this case: (b)(2)(D)(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement; and (b)(2)(D)(ii) the <u>notice states that the recipient may make a request to the sender</u> of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine…." (Mem. In Supp. MTD 2.) (Emphasis in Original.)

However, the quotation of the law provided by Dale is incomplete. Per the statute, the notice must state "that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine

4

or machines <u>and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful</u>." 47 U.S.C. § 227(b)(2)(D)(ii) (Emphasis added). The opt-out language on Dale's faxes are obviously deficient as it fails to notify the recipient that a sender's failure to comply within thirty (30) days is unlawful. In an attempt to avoid this reality, Dale simply provides half-quotes to the Court. As with its failure to notify the Court that its authority on its pick-off attempt is no longer good law, such action is troubling and misleading.

And moreover, the opt-out language is only relevant in cases where the defendant asserts an established business relationship with the fax recipient. *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15–16 (D.D.C. 2015) ("The TCPA exempts from liability 'unsolicited advertisements' sent to recipients with whom the sender has an 'an established business relationship.'") 47 U.S.C. § 227(b)(1)(C)(i). This does not end the inquiry though:

> Merely demonstrating an "established business relationship" between the sender and recipient, however, is insufficient to come within the safe harbor. To qualify, a facsimile also must contain a "notice," 47 U.S.C. § 227(b)(1)(C)(iii), that includes certain statutorily required elements, *id.* at § 227(b)(2)(D). Those elements include a specific written disclosure "that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements ... *and* that failure to comply, within the shortest reasonable time, as determined by the [FCC], ... is unlawful." *Id.* at § 227(b)(2)(D)(ii) (emphasis added). The FCC has issued rules that define "shortest reasonable time" as 30 days and provide that "failure to comply [with a request to opt out], within 30 days ... is unlawful." 47 C.F.R. § 64.1200(a)(4)(iii)(B); *see also City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.,* Civ. Action No. 11–2658, 96 F.Supp.3d 403, 418, 2015 WL 1421539, at *11 (D.N.J. Mar. 27, 2015) ("[T]he advertisement ... must state that the sender's failure to comply with a request or removal within 30 days violates applicable law[.]").

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15–16 (D.D.C. 2015); *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 885 (N.D. Ill. 2014).

As the D.C. Circuit has explained:

The Act contains an exception that allows certain unsolicited fax advertisements. The statute permits unsolicited fax advertisements where (1) "the unsolicited advertisement is from a sender with an established business relationship with the recipient"; (2) the sender obtained the recipient's fax number through "voluntary communication" with the recipient or "the recipient voluntarily agreed to make" his information available in "a directory, advertisement, or site on the Internet"; **and (3) the unsolicited advertisement "contains a notice meeting the requirements under paragraph (2)(D)."** Id. § 227(b)(1)(C)(i)-(iii). Paragraph (2)(D), in turn, provides, among other things, that the notice must be "clear and conspicuous" and "on the first page of the unsolicited advertisement," must state that the recipient may opt out from "future unsolicited advertisements," and must include a "cost-free mechanism" to send an opt-out request "to the sender of the unsolicited advertisement." Id. § 227(b)(2)(D).

*Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir. Mar. 31, 2017) (emphasis added). While Dale's Motion is silent with respect to whether it claims to have had an EBR with Plaintiff, its response to discovery is clear: "Defendant has no relationship with Plaintiff." (Response to Interrogatory No. 1.) Absent one, the entire conversation regarding its supposedly sufficient opt-out language on its faxes is irrelevant, though as explained the EBR defense would fail due to the insufficient opt-out language even if an EBR was claimed.

Defendant's Motion should be denied for this reason as well.

**C.  Plaintiff's Class Claims Also Survive.**

Finally, Defendant asks that the Court "dismiss" Plaintiff's class claims. This isn't appropriate for a Motion to Dismiss.

"[T]hough procedurally permissible, striking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy." *Modern Holdings, LLC v.*

6

*Corning Inc.*, No. CIV. 13-405-GFVT, 2015 WL 1481459, at *2 (E.D. Ky. Mar. 31, 2015) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)); *Chen–Oster v. Goldman, Sachs & Co.,* 877 F.Supp.2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking . . . motions of this kind are deemed procedurally premature."); *Chenensky v. New York Life Ins. Co.,* No. 07 CIV. 11504 WHP, 2011 WL 1795305, *1 (S.D.N.Y. Apr.27, 2011) ("A motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."); *Rios v. State Farm Fire & Cas. Co.,* 469 F.Supp.2d 727, 740 (S.D. Iowa 2007).

To prevail on a motion to deny certification, the movant must meet a high burden of showing that the class allegations are "facially and inherently deficient." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (Citations omitted). That is, "[t]he moving party has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery]." *Schilling v. Kenton Cnty., Ky.*, No. CIV.A. 10-143-DLB, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011); *see also Bearden,* 720 F.Supp.2d at 942 (providing that class allegations should be stricken prior to discovery only if "it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23").

Put differently, "[b]efore a motion to strike class allegations is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim[s] ... succeed in class action form." *Sanders v. Apple Inc.,* 672 F.Supp.2d 978, 990 (N.D. Cal. 2009) (citations omitted). Indeed, if the "dispute concerning class

7

certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *See Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *Santiago v. RadioShack Corp.,* No. 11 C 3508, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012) (similar); *see also Boatwright v. Walgreen Co.,* No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, ... a decision denying class status by striking class allegations at the pleading stage is inappropriate.").

To be clear, it is Defendant's burden at this stage to demonstrate that the class allegations should be stricken. *See Ramos v. U.S. Bank Nat. Ass'n,* No. CV 08–1150–PK, 2009 WL 3834035 (D. Or. Nov. 16, 2009) ("[I]n the context of a motion to *strike* class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable."); *Romano v. Motorola, Inc.,* No. 07–CIV–60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) ("Defendants, in contending that class certification in this case is precluded as a matter of law, have the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.").

Defendant's Motion doesn't even mention, let alone attempt to meet, this standard, and indeed Dale has offered nothing to suggest class certification would be impossible here. As indicated above, Dale's plea to dismiss the class claims is grossly premature. Such motions are particularly disfavored when the Court is asked, as it is here, "to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and **before**

**plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification**." *Chenensky*, 2011 WL 1795305 at *1 (citations omitted) (emphasis added). Alle's preemptive attack on class certification fits squarely within this concern. Indeed, if the "dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *See Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *see also Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, . . . a decision denying class status by striking class allegations at the pleading stage is inappropriate.").

Additionally, far from being a case where class allegations should be stricken, class certification will ultimately prove to be rather textbook here. The junk fax case *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) is instructive. There, the court held:

> Notably, whether the facsimile was "unsolicited" appears to be more of a common issue in this case than in the cases that denied class certification. Omnipak alleges that it obtained all of the recipients' facsimile numbers from the Manufacturers' News database. ***Therefore, whether the recipients' inclusion in the Manufacturers' News database constitutes express permission to receive advertisements via facsimile is a common issue.*** In fact, plaintiff has provided some authority, albeit incomplete, from the Federal Communications Commission ("FCC") stating that if a sender "obtains the number from sources of information compiled by third parties—*e.g.,* ... commercial databases ...—the sender must take reasonable steps to verify that the recipient consented to have the number listed...." Williamson Decl., Ex. C. If the FCC's opinion, or similar authority, is credited and defendant took no steps to verify consent, then there would be no need for individual evidence on the permission issue. In contrast, in the cases relied on by defendant, the issue of whether each potential class member gave permission to receive the facsimiles was key. *See, e.g., Kenro, Inc.,* 962 F.Supp. at 1169; *Forman,* 164 F.R.D. 400. Those defendants did not, as defendant does here, assert that they received the facsimile numbers and consent to receive facsimiles from the recipients' inclusion in a database.

9

> . . . Furthermore, it is undisputed that Omnipak engaged in a common course of conduct by obtaining the facsimile numbers in the same way and sending the same broadcast facsimile to all recipients within a short period of time as part of the same effort to generate new business. Because Omnipak engaged in the same conduct with respect to all recipients, the issue of whether its conduct was willful will be common. Additional common issues include Manufacturers' News' practices in compiling its database, the circumstances surrounding Omnipak's purchase and use of the database, and which party bears the burden of proving whether the recipients gave permission to receive the facsimiles.

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) (Emphasis added).

Here, Defendant admits that it "is [its] usual and customary practice to create our advertisement from our standard template. This is the practice in every case." (*See* Defendant's Affidavit in Support of Motion). The template contains the same deficient opt-out language. (*See id.*) Defendant also admits that it obtained every Class member's fax number in the same way—by purchasing a "lead sheet" from Info USA in 2010 and in 2014. (See Exhibit A, Interrogatories No. 2 and 3.) Finally, Defendant states that it contracted with a single third-party to send the faxes on its behalf. (*See id.*, Interrogatory No. 6.)

Thus, while discovery has only just begun, Defendant's responses at this early stage indicate that it used a standard template for all faxes, the template contained the same deficient opt-out language as the faxes sent to Plaintiff, and that it obtained the fax numbers from the same lead source. As will be shown at the appropriate time after the conclusion of discovery, common issues abound for which this case will provide common answers, including key questions upon which each Class Member's claims either succeed or fail. For the time being, Dale's Motion should be denied.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court should deny Dale's Motion.

              Respectfully submitted,

Dated: September 18, 2020    **BRUCE E. KATZ, M.D., P.C.**, individually and on behalf of all others similarly situated,

              By: /s/ Patrick H. Peluso
                One of Plaintiff's Attorneys

              Patrick H. Peluso*
              ppeluso@woodrowpeluso.com
              Woodrow & Peluso, LLC
              3900 East Mexico Ave., Suite 300
              Denver, Colorado 80210
              Telephone: (720) 213-0675
              Facsimile: (303) 927-0809

              Shawn Kassman
              shawnkassman@centralisliplawyer.com
              Law Office of Shawn Kassman, Esq. PC
              110 Carleton Avenue
              Central Islip, New York 11722
              Tel: 631-232-9479
              Fax: 631-232-9489

              Attorneys for Plaintiff and the Classes

              * *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, Patrick H. Peluso, an attorney, hereby certify that on September 18, 2020, I caused the above and foregoing papers to be served upon counsel of record by transmitting such papers by electronic mail.

By: /s/ Patrick H. Peluso